■ MARINE MIDLAND BANK, N. A., Respondent-Appellant, v PETER G. CAFFERTY, Appellant-Respondent, et al., Defendants. —Weiss, J. P. Cross appeals from an order of the Supreme Court (Smyk, J.), entered January 9, 1991 in Broome County, which, *inter alia,* partially granted plaintiff's motion for summary judgment.

Defendant Peter G. Cafferty applied for a mortgage from plaintiff to finance the purchase of a large tract of land in the Town of Windsor, Broome County, and to develop the infrastructure on a portion for a residential community. On August 28, 1986, plaintiff issued a commitment to grant a 24-month mortgage loan in the sum of $1.2 million subject to a number of general and specific conditions. The loan, mortgage and building loan contract closed on November 5, 1986 with full repayment to be made by November 1, 1988.

The project was not completed by November 1, 1988, nor was the loan repaid, and negotiations with proposals and counterproposals for refinancing ultimately proved fruitless. Plaintiff commenced this action to foreclose the mortgage in March 1990 and Cafferty answered with nine affirmative defenses and 10 counterclaims. Cafferty alleged, *inter alia,* fraud in the inducement and breach of contract by plaintiff by violating the implied covenants of good faith and fair dealing during the course of the loan resulting in equitable estoppel of plaintiff's right of foreclosure. Supreme Court granted plaintiff summary judgment on its foreclosure cause of action, dismissed all of Cafferty's affirmative defenses, denied plaintiff's motion to dismiss the counterclaims, severed the counterclaims and granted Cafferty's discovery motion. Because Supreme Court rendered no written decision, a practice which this court actively discourages *(see, Dworetsky v Dworetsky,* 152 AD2d 895, 896; *Flax v Standard Sec. Life Ins. Co.,* 150

AD2d 894, 896), we are without the benefit of its rationale. Both parties have appealed.

Cafferty states in an affidavit that one of plaintiff's officers induced him to agree to and execute the note, mortgage and building loan contract through fraudulent promises and misrepresentations concerning the issuance of future credit and project financing beyond the initial loan. He alleges that throughout the mortgage period the officers servicing the mortgage assured him that the term would be extended, which he argues is proof that plaintiff resorted to fraud and misrepresentation in the procurement and during the term of the mortgage. Plaintiff contends that where the documents specifically address the representations complained of, any claim based upon fraud in the procurement merged into the instruments executed and was thereafter barred.

While general merger clauses are ineffective to exclude parol evidence of fraud in the inducement (Sabo v Delman, 3 NY2d 155, 162), a specific disclaimer destroys allegations that the agreements were executed in reliance upon contrary oral misrepresentations (Danann Realty Corp. v Harris, 5 NY2d 317, 320). Here, Cafferty himself had proposed an amendment to the terms of plaintiff's commitment letter, which plaintiff accepted stating: "10. We understand that the term of the commitment by [plaintiff] pursuant to your August 28, 1986 letter is for 24 months. We have advised [plaintiff], in accordance with Mr. Cafferty's proposal, that the entire project cannot be completed within that time, and that at the expiration of the twenty-four month period, Mr. Cafferty will make an additional application to [plaintiff] to incorporate the balance outstanding upon the Note at that time with the additional development of the premises, but [plaintiff] does not hereby obligate itself to make such additional financing available." Where the person claiming to have been defrauded has by specific contract provisions agreed to terms which are contrary to the oral promises allegedly relied upon, he himself would be guilty of deliberately misrepresenting his own true intentions and the parol evidence rule applies (see, Citibank v Plapinger, 66 NY2d 90, 95-96).

The specific contract terms in this case effectively destroy Cafferty's allegations that he executed the contract in reliance upon plaintiff's alleged absolute promise to extend the due date and to increase the mortgage loan. There being no valid evidence showing that plaintiff resorted to fraud or misrepresentation in procuring the mortgage, Cafferty is bound by the terms thereof (see, Northeast Sav. v Rodriguez, 159 AD2d 820,

821, *amended* 162 AD2d 749, *appeal dismissed* 76 NY2d 889). Plaintiff's documentary evidence established a valid mortgage and Cafferty admits there is an unpaid past due balance. Therefore, plaintiff has made a prima facie showing of entitlement to summary judgment on the allegations in the complaint *(see, Marine Midland Bank v Brown,* 115 AD2d 523, 524, *lv denied* 67 NY2d 607).

Beyond the allegations of fraud in the inducement, the fabric of Cafferty's affirmative defenses and counterclaims is that plaintiff first breached the agreement and caused his default. Cafferty states that the acknowledged basis for the loan was completion of the infrastructure for phase I of a planned residential community, which by its very terms required restructured financing upon its completion as an integral part of the project.

Clearly, plaintiff did not obligate itself to make additional financing available. Cafferty alleges, however, that plaintiff did commit itself to good-faith consideration of the same. As early as March 25, 1988, Cafferty claims he sought to renegotiate the finances in order to ensure completion of the project. Thereafter as part of that negotiation, he claims that plaintiff limited him to develop the infrastructure for lot Nos. 1 through 13. Cafferty essentially contends that he was maneuvered, in bad faith, into a situation where plaintiff prevented refinancing and foreclosure became the only alternative, and that in doing so plaintiff breached the contract and its implied covenant of good faith and fair dealing *(see, Gordon v Nationwide Mut. Ins. Co.,* 30 NY2d 427, 437, *cert denied* 410 US 931). Whether Cafferty acted in justified reliance upon plaintiff's assurances, whether plaintiff was aware of Cafferty's reliance, and whether the consequence of plaintiff's withdrawal of its representations caused Cafferty to lose the opportunity to negotiate refinancing or a sale on terms more favorable than foreclosure resulting in estoppel are the allegations which comprise Cafferty's counterclaims but are not sufficient to withstand summary judgment scrutiny as affirmative defenses in light of plaintiff's showing. In view of the evidence submitted on the motion, it was incumbent upon Cafferty to make at least an evidentiary showing that an issue of fact existed. The law is well settled that a party, in opposition to a motion for summary judgment, must assemble and lay bare affirmative proof to establish that the matters alleged are real and capable of being established upon a trial *(Zuckerman v City of New York,* 49 NY2d 557, 563-564). Cafferty's generalized state-

ments are insufficient and, accordingly, the judgment of foreclosure must be affirmed.

We note that Supreme Court correctly ordered *sua sponte* that the counterclaims be severed despite the absence of a motion for such relief *(see,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C603:1, at 272). Cafferty's further contention that severance was improper because there are common issues of law and fact is unpersuasive because this is a mortgage foreclosure action in which the acts upon which the counterclaims are predicated occurred after the execution of the mortgage *(see, Northeast Sav. v Rodriguez,* 159 AD2d 820, 821-822, *supra; see also, Bankers Trust N. Y. Corp. v Renting Off.,* 91 AD2d 1140, 1141). Moreover, Cafferty has not demonstrated that he would be unable to recover should he prevail on his severed counterclaims.

We next turn to the 10 counterclaims which plaintiff contends should have been dismissed. The factual matrix alleged remains the same throughout these counterclaims, i.e., Cafferty's contentions of the promises made to extend the term of the loan and to lend additional funds, and his reliance on those promises. Plaintiff has attacked the counterclaims as failing to state causes of action, but fails to address them in a factual manner. "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case * * * Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" *(Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853 [citations omitted]). Because plaintiff's attack on the counterclaims fails to offer proof sufficient to eliminate issues of fact raised by Cafferty's counterclaims, plaintiff has limited its motion to the legal insufficiency of the counterclaims. The first, third and tenth counterclaims, which in different variations comprise Cafferty's defense to the foreclosure action, sufficiently set forth the three causes of action as counterclaims. However, we find that the remaining seven counterclaims should have been dismissed.

The second counterclaim alleging breach of an oral contract to extend and refinance the loan fails to set forth the specifics of the oral contract allegedly breached. The building loan contract required that any amendments or modifications had to be in writing and, inasmuch as the alleged "oral contract" would modify the existing mortgage or create a new mortgage,

the Statute of Frauds would be a complete defense (General Obligations Law §§ 5-703, 15-301), thus requiring dismissal of this counterclaim.

As already noted, those allegations focusing upon misrepresentations made prior to the time of execution of the agreements were specifically superseded by the contradictory contract terms *(see, Citibank v Plapinger,* 66 NY2d 90, 95-96, *supra; Danann Realty Corp. v Harris,* 5 NY2d 317, *supra).* Accordingly, the fourth counterclaim alleging fraud in the inducement should be dismissed.

Cafferty's fifth counterclaim rests upon alleged negligence in approving his mortgage application and the administration of the loan. Negligence must arise out of the breach of a positive duty which the law imposes upon parties to a contractual relationship or because of the negligent manner in which some act provided for in the contract was performed *(Beckford v Empire Mut. Ins. Group,* 135 AD2d 228, 233). In this instance plaintiff did not affirmatively warrant the soundness of the project or agree to extend the length of the loan. It also did not agree to continue loan advances after the due date and therefore had no duty which could be breached *(see, supra,* at 234). Plaintiff had no obligation to monitor the project for economic viability. Therefore, the fifth counterclaim should have been dismissed.

We similarly find that plaintiff's limited involvement as alleged fails to support the conclusion that it took control of the project and fails to establish a fiduciary relationship. Thus, the sixth counterclaim should be dismissed.

The seventh counterclaim alleging economic duress fails to state a cause of action because a party cannot be guilty of economic duress for refusing to do something which it is not legally required to do *(805 Third Ave. v M.W. Realty Assocs.,* 58 NY2d 447, 453). Because plaintiff was under no duty to extend the loan, to provide further loan advances and additional funding, or to forebear from its contract rights upon default, this counterclaim should be dismissed.

Prima facie tort affords a remedy for the infliction of intentional harm resulting in damage without excuse or justification, by an act or series of acts which would otherwise be lawful *(Freihofer v Hearst Corp.,* 65 NY2d 135, 142-143). Because the May 1, 1989 demand for payment and this action in foreclosure both occurred well after the due date and after negotiations had apparently broken down, plaintiff has demonstrated valid justification for its acts and, accordingly, the eighth counterclaim should have been dismissed.

The ninth counterclaim for intentional infliction of emotional distress fails to state acts and statements which are extreme or outrageous. Plaintiff's conduct does not approach the level which "so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society" *(Freihofer v Hearst Corp., supra,* at 143). This counterclaim should therefore also be dismissed.

Yesawich Jr., Levine, Mercure and Harvey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion to dismiss the second, fourth, fifth, sixth, seventh, eighth and ninth counterclaims of defendant Peter G. Cafferty; motion granted to that extent and said counterclaims dismissed; and, as so modified, affirmed.